# UNITED STATES DISTRICT COURT

for the

Eastern District of California



FILED

APR 05 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | |
|---|---|
| THE PERSONS OF HEIDI PHONG AND SANDIE ZHONG, AND MOBILE PHONES BELONGING TO OR SUBSCRIBED TO HEIDI PHONG AND SANDIE ZHONG, BELIEVED TO HAVE PHONE NUMBERS 916-949-6089, 916-698-8801, 916-743-1156, and 916-743-1145; A DARK GRAY HONDA ODYSSEY WITH PAPER PLATES WITH VIN 5FNRL5H91GB156249, DRIVEN BY HEIDI PHONG and A BLACK VOLKSWAGEN TIGUAN SUV WITH PAPER PLATES, DRIVEN BY SANDIE ZHONG | Case No. 2:18-SW  0325  EFB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846, 856; 18 U.S.C. §§ 1956, 1957 | Conspiracy to Manufacture, Possess with Intent to Distribute, and Distribute Marijuana; Maintaining a Place for Manufacture and Distribution of Marijuana; Money Laundering. |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☐ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Applicant's signature_

Special Agent Shawn Breslin, IRS-CI
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 4—4—2018

_Judge's signature_

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
_Printed name and title_

MCGREGOR W. SCOTT
United States Attorney
ROGER YANG
MATTHEW M. YELOVICH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>THE PERSONS OF HEIDI PHONG AND SANDIE ZHONG, AND MOBILE PHONES BELONGING TO OR SUBSCRIBED TO HEIDI PHONG AND SANDIE ZHONG, BELIEVED TO HAVE PHONE NUMBERS 916-949-6089, 916-698-8801, 916-743-1156, and 916-743-1145; A DARK GRAY HONDA ODYSSEY WITH PAPER PLATES WITH VIN 5FNRL5H91GB156249, DRIVEN BY HEIDI PHONG and A BLACK VOLKSWAGEN TIGUAN SUV WITH PAPER PLATES, DRIVEN BY SANDIE ZHONG | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR WARRANTS TO SEARCH AND SEIZE |

I, Shawn Breslin, being first duly sworn, hereby depose and state as follows:

## I.       SCOPE OF REQUESTED SEARCH WARRANTS

1.       I make this affidavit in support of an application under Rule 41 of the Federal Rules of

Criminal Procedure for a warrant to search the THE PERSONS OF HEIDI PHONG AND SANDIE

ZHONG, AND MOBILE PHONES BELONGING TO OR SUBSCRIBED TO HEIDI PHONG AND

SANDIE ZHONG, BELIEVED TO HAVE PHONE NUMBERS 916-949-6089, 916-698-8801, 916-

743-1156, and 916-743-1145; A DARK GRAY HONDA ODYSSEY WITH PAPER PLATES WITH

VIN 5FNRL5H91GB156249, DRIVEN BY HEIDI PHONG and A BLACK VOLKSWAGEN TIGUAN

1  SUV WITH PAPER PLATES, DRIVEN BY SANDIE ZHONGfor the things described in Attachment

2  B.

3          **II.**      **INCORPORATION OF PREVIOUS AFFIDAVIT**

4       2.     This affidavit and application for a search warrant is made as part of a "rollover" from the

5  warrants signed by United States Magistrate Judge Edmund F. Brennan on March 29, 2018, authorizing

6  the search of HP Real Estate offices at 5648 Belleview Avenue, Sacramento, California, and 9105

7  Brucevill Road, Ste. 6A, Elk Grove, California.  Accordingly, attached hereto as EXHIBIT 1 and

8  incorporated by reference as if fully set forth herein is the affidavit of IRS-CI Special Agent Lisa S.

9  Ulrikson in support of the search warrants signed March 29, 2018.

10        **III.**     **ADDITIONAL FACTS IN SUPPORT OF REQUESTED WARRANT**

11       3.     As described above and in Attachment B, this application seeks permission to search for

12  records contained on the PHONG DEVICES and ZHONG DEVICES, on the persons of HEIDI PHONG

13  or SANDIE ZHONG, or in their associated vehicles.

14       4.     Although IRS-CI has authority from the previous search warrants to seize the devices at

15  the business offices of HP Real Estate, as of 11:30 a.m. on April 4, 2018, neither Sandie Zhong nor

16  Heidi Phong at appeared at those businesses for work.  Therefore, this application and warrant will allow

17  federal agents to seek the same records sought from the business and associated devices in other

18  locations, such as on these individuals' persons or their associated vehicles, if they fail to come to the

19  businesses in question.

20       5.     On March 29, 2018, federal agents surveilled Sandie Zhong driving a black Volkswagen

21  Tiguan SUV with paper plates.

22       6.     On April 3, 2018, federal agents surveilled Heidi Phong driving a dark gray Honda

23  Odyssey with paper plates with VIN 5FNRL5H91GB156249.  The car is registered to Sam Phong.

24       7.     I know from training and experience that individuals committing financial and other

25  crimes often keep evidence of such crimes on their mobile devices and often keep such evidence of their

26  criminal activity, including their mobile devices, on their person or in their vehicles.

27     **IV.**     **MOBILE DEVICES, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

28       8.     As described above and in Attachment B, this application seeks permission to search for

records contained on the PHONG DEVICES and ZHONG DEVICES or on the person of HEIDI PHONG or SANDIE ZHONG.

9.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

10.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the PHONG DEVICES and ZHONG DEVICES were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the PHONG DEVICES and ZHONG DEVICES because:

11.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

12.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

13.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

14.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

15.     Further, in finding evidence of how a device was used, the purpose of its use, who used

1  it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage

2  medium.

3      16.    Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

4  warrant I am applying for would permit the examination of the device consistent with the warrant.  The

5  examination may require authorities to employ techniques, including but not limited to computer-

6  assisted scans of the entire medium, that might expose many parts of the device to human inspection in

7  order to determine whether it is evidence described by the warrant.

8                              **V.    CONCLUSION**

9      17.    I submit that this affidavit supports probable cause for a warrant to search THE

10  PERSONS OF HEIDI PHONG AND SANDIE ZHONG, AND MOBILE PHONES BELONGING TO

11  OR SUBSCRIBED TO HEIDI PHONG AND SANDIE ZHONG, BELIEVED TO HAVE PHONE

12  NUMBERS 916-949-6089, 916-698-8801, 916-743-1156, and 916-743-1145; A DARK GRAY

13  HONDA ODYSSEY WITH PAPER PLATES WITH VIN 5FNRL5H91GB156249, DRIVEN BY

14  HEIDI PHONG and A BLACK VOLKSWAGEN TIGUAN SUV WITH PAPER PLATES, DRIVEN

15  BY SANDIE ZHONG, as described in Attachment A, and seize the items described in Attachment B.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## VI.   REQUEST FOR SEALING

2      18.    It is respectfully requested that this Court issue an order sealing, until further order of the

3  Court, all papers submitted in support of this application, including the application and search warrant.  I

4  believe that sealing this document is necessary because the items and information to be seized are

5  relevant to an ongoing investigation into the criminal organizations as not all of the targets of this

6  investigation will be searched at this time.  Premature disclosure of the contents of this affidavit and

7  related documents may have a significant and negative impact on the continuing investigation and may

8  severely jeopardize its effectiveness.

9                                                                        Respectfully submitted,

10

11                                                                        Shawn Breslin
                                                                          Special Agent
12                                                                        Federal Bureau of Investigation

13

14  Subscribed and sworn to before me on: 4-4-2018

15

16  The Honorable Edmund F. Brennan

17  UNITED STATES MAGISTRATE JUDGE

18

19

20  Approved as to form by AUSA MATTHEW M. YELOVICH

21

22

23

24

25

26

27

28

## ATTACHMENT A

The property to be searched is:

(1)  The person of Heidi Phong;

(2) Mobile phones belonging to or subscribed to Heidi Phong, believed to have phone numbers 916-949-6089, 916-698-8801, and 916-743-1156;

(3) The vehicle driven by Heidi Phong, a dark gray Honda Odyssey with paper plates with VIN 5FNRL5H91GB156249;

(4) The person of Sandie Zhong;

(5) Mobile phones belonging to or subscribed to Sandie Zhong, believed to have phone number 916-743-1145.

(6) The vehicle driven by Sandie Phong, a black Volkswagen Tiguan SUV with paper plates.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

The items to be seized are evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses") occurring on or after January 1, 2012:  21 U.S.C. § 841(a)(1) – Manufacture, Possess with Intent to Distribute, and Distribution of Marijuana; 21 U.S.C. § 846 – Conspiracy to Manufacture and Distribute Marijuana; 21 U.S.C § 856 – Maintaining a Place for Manufacture and Distribution of Marijuana; 18 U.S.C. § 1956(a)(2)(A) – Money Laundering; 18 U.S.C. § 1956(h) – Conspiracy to Launder Money; and 18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, namely:

**Definitions:**

The terms "records" and "documents" and "materials" include all of the forgoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CS-ROMs, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as a tablet computers, "smart phone" communication device, as wells as printouts or readouts from any magnetic storage device); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

**The following documents and items for the time period January 1, 2014 to the present:**

a.      All property files including but not limited to escrow files; sales files; purchase agreements; property transaction records including deeds, deeds of trust, notices of default, trust documents, and notices of sale; notary books, appraisals, letters, mortgage and/or loan records; credit reports, loan application, verification of deposit, employment(s) and correspondence related thereto; promissory notes; canceled checks and bank records; rental agreements, leases, and contracts; rent/income ledgers; journals and ledgers or other books of original entry including cash receipts/disbursement journals, general journals and other books of account; correspondence relating to the purchase, sale, or rental/lease of real estate; records documents and materials including client files reflecting offers to purchase or rent properties by, for, and on behalf of clients and potential borrowers and buyers; any correspondence.

b.      Documents, records and materials indicating ownership and/or possession of premises to be searched including but nor limited to utility bills, telephone bills, mail and vehicle registration and ownership information and address books or calendars.

c.      Large amounts (in excess of $1,000) of U.S. and/or Foreign currency.

d.      Banking and financial institution records including but not limited to bank statements, canceled checks, money orders, traveler's checks, cashier's checks, deposit slips, check and savings books, loan applications, loan statements, wire transfer slips, credit card

transaction slips and statements, and evidence of rental or control of safe deposit boxes or other storage locations including safety deposit box or locker keys.

   e.     Unopened mail matter for the individuals and/or business names listed above.

   f.     Corporate minute books of stockholders and board of director meetings, and other records that identify ownership and control of the operation.

   g.     State and Federal tax returns and return information and tax preparation documents, and personal computer records that maintain such information, in the names of the individuals and/or the businesses listed above.

   h.     Employee lists, employment agreements, independent contractor agreements, or other documents concerning who was employed by HP Real Estate, Skye Investment, LLC and what their job descriptions or roles were.

   i.     Records which identify or lead to the identification of the purchase of any tangible assets by any of the individuals or entities listed above.

   j.     Diaries, calendars (whether conventional or electronic), appointment books, journals, address/telephone books (including an address/telephone rolodex or similar index).

   k.     All electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data.  These devices include, but are not limited to, computers, computer components, computer peripherals, removable media (floppy disks, Zip disks, tapes, CD-ROM's, flash cards), word processing equipment, modems, monitors, plotters, encryption circuit boards, optical scanners, external hard disk drives, and other computer related electronic devices

   l.     All instruction or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components.  The items to be seized include, but are not limited to, operating systems, application software, passwords, decryption keys, utility programs, compilers, interpreters, and any other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission.

   m.     All records and communication pertaining to power supply to residential houses including power needs and names and contact information for electricians.

   n.     All communications, whether written, digital, or otherwise, discussing inspections of houses or scheduling of inspection of houses.

   o.     Communications about, whether written, digital, or otherwise, pictures or copies of, wires from China.

p.      Communications about, whether written, digital, or otherwise about persons not on the title of residences contributing to the purchase of residences.

q.      Communications about, whether written, digital, or otherwise home buyers not wanting or otherwise forgoing home inspections.

r.      Communications or reports about, whether written, verbal, digital, or otherwise, law enforcement or code enforcement actions at any properties associated with, or currently or previously represented by HP Real Estate or Skye Investment LLC.

s.      Communications, reports, pictures of, or any other documentation of growing marijuana.

t.      Information, research, news articles, or publications about the legal status, regulations, or ordinances concerning the growing of marijuana in California or the United States. This EXCLUDES attorney-client privileged communications or materials.

u.      Ledgers, calculation sheets, fee schedules, or other documents indicating how much Heidi Phong, Sandie Zhong, Jenny Chu, HP Real Estate, Davis Berk Realty, or Skye Investment LLC should be paid for its services.

v.      All records relating to hard money lenders including but not limited to FJM, any communication logs, ledgers, financial agreements, payments or referral fees, loan applications, loans documents, loan agreements, internal memorandums, re-payment records, all correspondence.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lisa S. Ulrikson, being first duly sworn, hereby depose and state as follows:

### SCOPE OF REQUESTED SEARCH WARRANTS

1.      I make this affidavit in support of applications for search warrants of two businesses located in the greater Sacramento, California, area.  The businesses are identified as:

a.      HP Real Estate, 5648 Belleview Avenue, Sacramento, California, which is referred to hereafter as "Target Location 1" and is further described in Attachment A-1;

b.      HP Real Estate, 9105 Bruceville Road., Ste 6A, Elk Grove, California, which is referred to hereafter as "Target Location 2" and is further described in Attachment A-2;

2.      These search warrant locations, described in more detail in Attachments A-1 and A-2, attached hereto and incorporated herein by reference, are referred to collectively as the "Target Locations."

3.      The Target Locations are believed to be connected to a broader scheme to purchase residential homes in the Sacramento region for use as indoor marijuana growing operations using similar financing, often wires from Fujian Province, China; employing certain hard-money lenders rather than traditional lenders with more favorable economic terms; utilizing specific realtors; and sharing other common traits and methodologies, as described below.  I request search warrants for each location to establish further evidence of their commonalities and to uncover more information regarding the individuals, groups, businesses and organizations orchestrating, financing and operating the marijuana growing operation.

4.      Because this affidavit is being submitted for the limited purpose of securing search warrants for the Target Locations identified above, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe establish probable

cause for securing search warrants for the described locations and for searching for and seizing evidence, fruits, and instrumentalities of the alleged violations.

### TRAINING AND EXPERIENCE

5.     I am a Special Agent with United States Department of the Treasury, Internal Revenue Service Criminal Investigation (IRS-CI), and have been since June of 2000.  In the course of my employment, I have conducted or been involved in over fifty investigations of alleged criminal violations, which have included: income tax evasion (Title 26, U.S.C. Section 7201); subscribing to false income tax returns (Title 26 U.S.C. Section 7206(1)); money laundering (Title 18 U.S.C. Sections 1956 and 1957); structuring cash transactions (Title 31 U.S.C. Section 5324(3)); mail fraud (Title 18 U.S.C. Section 1341); distribution of controlled substances (Title 21 U.S C. Section 841(a)(1)); wire fraud (Title 18 U.S.C. Section 1343); conspiracy (Title 18 U.S.C. Sections 371 and 1349) and forfeiture (Title 18 U.S.C. Section 981). Most of these investigations focused on individuals deriving income from illegal sources (narcotics or fraud).

6.     I have attended over 1,000 hours of training in various aspects of criminal investigation as well as attending and instructing classes and seminars dealing specifically with money laundering, international tax and money laundering, seizure, forfeiture, various financial investigative techniques, advanced interviewing and related financial and narcotic investigations. I also have a Bachelor's of Science Degree in Accounting from Arizona State University.

7.     From my training and experience, I know that individuals normally maintain records of their financial activity in their residence or business locations, including receipts for expenditures by cash and check, bank records, and other financial documents.  In addition, I know that these items are commonly and fluidly transferred between locations, with seemingly

2

personal financial records found in a business setting, and business records brought into the home. This practice has become commonplace as more industries have been found conducive to a work at home arrangement.

8.     Based on my training and experience, individuals who have accumulated wealth and assets will maintain those records as long as they own the assets and even after the asset has been disposed. Furthermore, I have seen individuals place ownership of assets under the control of others or under entities to conceal the true ownership.

9.     From my training and experience as well as my consultations with other special agents with whom I have worked, I am aware that individuals maintain evidence for long periods of time for several reasons. First, to any individual, the evidence may seem innocuous at first glance (e.g. financial, credit card and banking documents, travel documents, receipts, client lists, documents reflecting purchases of assets, personal calendars, telephone and address directories, checkbooks, photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone bills, keys to safe deposit boxes, packaging materials, computer hardware and software). To law enforcement, however, such items may have significance and relevance when considered in light of other evidence. Second, the individual may no longer realize he/she still possesses the evidence or may believe law enforcement could not obtain a search warrant to seize the evidence. Third, the individual may operate under the belief that he/she has deleted, hidden, or further destroyed electronic evidence, which in fact, may be retrievable by a trained forensic computer expert.

10.     I make this affidavit, in part, on personal knowledge derived from my participation in this investigation and in part upon information and belief developed by other agents/detectives and financial analysts involved in this investigation. The sources of my

3

information and belief are: oral and written reports about this and other related investigations that I have received, directly or indirectly, from various law enforcement entities, subpoenaed bank records and other financial documents, physical surveillance conducted by other law enforcement personnel, that have been reported to me either directly or indirectly, and search warrant evidence.

11.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

12.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, U.S.C. §§ 841(a)(1), 856 and 846, conspiracy and manufacture of controlled substances (marijuana), and Title 18, U.S.C. §§ 1956(a) and (h), money laundering, have been committed by Heidi PHONG, Sandie ZHONG, and other known and unknown persons. There is also probable cause to search the Target Locations described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## RELEVANT STATUTES

13.     Pursuant to Title 21, U.S.C. § 841(a)(1), it is unlawful for any person knowingly or intentionally to manufacture, distribute or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

14.     Pursuant to Title 21, U.S.C. § 846, it is unlawful to conspire to commit a violation of Title 21, U.S.C. § 841(a)(1). Both of these violations are felonies punishable by more than one year's imprisonment.

15.     Pursuant to Title 21, U.S.C. § 856, it is unlawful to knowingly open, lease, rent, use or maintain any place, whether permanently or temporarily, for the purpose of

manufacturing, distributing, or using any controlled substance. It is also unlawful to manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of manufacturing, storing, distributing, or using a controlled substance. This violation is a felony punishable by more than one year's imprisonment.

16.     Pursuant to Title 21, U.S.C. § 881(a)(7), all real property, including any right, title and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used in any manner or part, to commit, or to facilitate the commission of a violation of Title 21 which is punishable by more than one year's imprisonment, is subject to forfeiture to the United States.

17.     Pursuant to Title 18, U.S.C. § 1956(a)(2)(A), whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place outside of the United States to or through a place inside the United States with the intent to promote the carrying on of specified unlawful activity shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is greater, or imprisonment for not more than twenty years, or both. Under Title 18, U.S.C. § 1956(h), it is a crime to conspire to commit a violation of Title 18, U.S.C. § 1956(a)(2)(A).

18.     Pursuant to Title 18, U.S.C. § 1956(a)(1), whoever , with knowledge that property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with intent to promote the carrying on of specified unlawful

activity, or knowing that the transaction is designed to conceal or disguise the nature, the

location, the source, the ownership, or the control of the proceeds of specified unlawful shall be

sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or

funds involved in the transportation, transmission, or transfer whichever is greater, or

imprisonment for not more than twenty years, or both. In addition, under Title 18, U.S.C. §

1956(a)(3), whoever with the intent to promote the carrying on of specified unlawful activity,

conducts or attempts to conduct a financial transaction involving property represented to be the

proceeds of specified unlawful activity or property used to conduct or facilitate specified

unlawful activity, shall be fined up to $500,000 or twice the value of the monetary instrument or

funds involved in the transportation, transmission, or transfer whichever is greater, or imprisoned

not more than 20 years, or both. Under Title 18, U.S.C. § 1956(h), it is a crime to conspire to

commit a violation of Title 18, U.S.C. § 1956.

19.     Pursuant to Title 18, U.S.C. § 981(a)(1), any property, real or personal, involved

in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of Title 18,

United States Code, or any property traceable to such property, is subject to forfeiture to the

United States.

## PROBABLE CAUSE

### IDENTIFICATION OF SUBJECTS

20.     YANG, Leonard.  Leonard YANG is an Asian male with a date of birth of

January 27, 1977 and an Ohio driver's license number of RS964254.  Leonard YANG was

indicted in the Eastern District of California for violations of 21 U.S.C. §§ 841(a)1) and 846 on

September 29, 2016 (case no. 2:16-CR-00189-KJM) for operating numerous marijuana grow

houses in the Sacramento, CA area.

21.   LI, Xiu Ping.   Xiu Ping LI is an Asian female with a date of birth of August 2, 1976 and a New Jersey driver's license number of L40017897758762. Xiu Ping LI was involved with Leonard YANG in the purchase of one marijuana grow house (9501 Jeffcott Road, Wilton, CA) and was also involved with other individuals in the purchase of three other suspected or proven marijuana grow houses:  7810 Elsie Avenue, Sacramento, California [purchased by Xiu Ping LI in her name], 2399 Cashaw Way, Sacramento, California [purchased by Jie LIN, identified below] and 13734 Montfort Road, Herald, California [purchased by Xiu Ping LI in her name]. From approximately January 15, 2016 through May 16, 2016, Xiu Ping LI received numerous wire transfers from individuals in China, totaling approximately $177,944.  Soon after receipt of these wire transfers, Xiu Ping LI purchased cashier's checks payable to Sacramento area title companies and/or initiated wire transfers directly to the title companies to purchase residential properties for the purpose of growing marijuana indoors, in violation of Title 21, U.S.C. §§ 841(a)(1) and 846 and Title 18, U.S.C. §§ 1956(a)(2)(A) and (h).

22.   LIN, Jie.   Jie LIN is an Asian male with a date of birth of August 9, 1976 and a New Jersey driver's license number of L44544010008762.  Jie LIN was the listed buyer for real property located at 2399 Cashaw Way, Sacramento, CA, which was a suspected indoor marijuana grow.

23.   PHONG, Heidi.   Heidi PHONG is an Asian female with a date of birth of February 27, 1982 and a California driver's license number of B7383469.  According to the California Bureau of Real Estate, Heidi PHONG is a licensed real estate salesperson and broker (license ID #01880534, issued September 2, 2010).  The information in this affidavit will show that through her multiple real estate related businesses, including HP REAL ESTATE and SKYE INVESTMENT, LLC, Heidi PHONG, along with some of her employees, including Sandie

7

ZHONG and Jenny CHU, facilitated the acquisition of homes in the Sacramento, CA area by Leonard YANG, Xiu Ping LI and Jie LIN, among others, solely for the purpose of growing marijuana indoors. The information will further show that probable cause exists to believe that to this day, Heidi PHONG continues to facilitate the acquisition of homes solely for the purpose of growing marijuana indoors, in violation of Title 21, U.S.C. §§ 841(a)(1) and 846 and Title 18, U.S.C. §§ 1956(a)(2)(A) and (h).

**PRIOR SEARH WARRANTS**

24.     On July 17, 2017, a federal search warrant (2:17-SW-0632-CKD) was approved by the Honorable U.S. Magistrate Judge Carolyn K. Delaney, for Gmail accounts associated with Heidi PHONG (heidiphong@gmail.com and tchpteam@gmail.com). The pertinent results from the return of the email search warrant are summarized in later sections of this affidavit.

In August 2014, the Drug Enforcement Agency (DEA) Sacramento District Office and the Elk Grove Police Department (EGPD) initiated a federal investigation of a criminal organization that was believed to be responsible for the cultivation and distribution of marijuana on a large scale (here after referred to as "The Organization"). The Organization was believed to be purchasing homes in the Sacramento region using money from China, converting these residences into indoor marijuana cultivation sites, and then trafficking the processed marijuana to other parts of the country, particularly the Eastern United States. As part of this investigation, on September 14, 2016, the DEA, IRS-CI, EGPD and the Sacramento County Sheriff's Department (SCSD) executed seven federal search warrants on residences associated with this indoor marijuana growing operation, and arrested Leonard YANG and several other individuals pursuant to Title 21 federal drug violations. In total, agents seized approximately 5,496

8

marijuana plants from the seven residences which were all converted into full-scale indoor marijuana grows.

25.     At approximately the same time as the Sacramento DEA drug trafficking investigation began, IRS-CI opened a parallel financial investigation pertaining to how the residences used for cultivation were purchased.  Both the DEA drug trafficking and the IRS-CI financial investigation have continued to date.

26.     During the continuing investigation, it was learned that Xiu Ping LI, an investor in Leonard YANG's marijuana growing operation, had also purchased several homes herself, either in her name or in the names of several of her relatives.  It was further learned that individuals who had provided funds for some of the homes bought by Xiu Ping LI had also purchased additional homes to grow marijuana.  On July 26, 2017, federal search warrants were executed at nine residences in the Sacramento and Roseville, CA areas, and approximately 7,750 marijuana plants were found and seized.  Xiu Ping LI, among several other individuals, was arrested and charged with federal controlled substance and money laundering violations.

27.     In June 2017, while federal agents were investigating the Xiu Ping LI organization, they learned of an investigation conducted by the Yuba County Sheriff's Department earlier in 2017 (hereinafter referred to as the "2017 Yuba County Investigation").  In January 2017, Yuba County law enforcement officials began investigating a large-scale marijuana cultivation and trafficking organization operating in Northern California, specifically, in the Marysville, Sacramento, and Wilton, CA areas.  In March 2017, law enforcement officials executed search warrants at nine houses in these areas, arrested an individual identified as Zhen Shang LIN, among others, and seized approximately 6,493 marijuana plants.  On July 6, 2017, based on surveillance conducted during the Xiu Ping LI investigation, it was determined that the

9

organized marijuana grow activity in residential areas identified in the 2017 Yuba County Investigation was directly linked to the federal Xiu Ping LI investigation by the presence of a vehicle registered to Zhen Shang LIN at one of the grow houses later searched by agents on July 26, 2017.

28.     This warrant is part of a federal investigation by FBI, DEA, DHS-HSI, and the IRS into indoor marijuana cultivation in Northern California. As this investigation has developed, agents have observed a number of common links between properties being used as indoor marijuana grows and suspected to be part of The Organization's operations or related individuals' and groups' criminal conduct. These links include: down payments financed by wires from Fujian Province, in China; the use of one of a handful of common realtors, namely Heidi PHONG and Tony DONG; the involvement of hard-money lenders, namely Petaluma-based FJM Private Mortgage Fund, LLC, rather than traditional banks, in purchasing the homes; and the structure and terms of the purchase itself. In turn, the homes often possessed other common characteristics after being purchased, such as high power usage, and association with certain individuals that marked them as marijuana grow houses rather than primarily residences.

29.     Since August 2014, the DEA has served dozens of search warrants and arrested at least 19 people for cultivating and distributing marijuana in cases related to this investigation and the Organization.

30.     Currently the investigation has identified in excess of one hundred homes in the Sacramento region that share some or all of the links that tied previously-searched homes to The Organization and to marijuana cultivation in residential neighborhoods. This affidavit seeks a search warrant for Heidi PHONG's businesses, identified as HP Real Estate, located at 5648 Belleview Ave, Sacramento, California and 9105 Bruceville Road, Ste 6A, Elk Grove, California

10

(Target Locations 1 & 2). PHONG is the listed real estate agent on over 50% of the properties that are believed to be indoor marijuana grows. I believe that there is probable cause to believe that there is evidence that she and/or her employees had knowledge that they were facilitating the purchase of several target properties that were involved in a large-scale common criminal enterprise for marijuana cultivation.

## COMMUNICATIONS

31.    A search of Leonard YANG's mobile phone was conducted after his arrest in September 2016. The search revealed text messages between YANG, PHONG, and others, on an application called WeChat. In part, the text messages included discussion of electrical amperage of homes PHONG was trying to find for YANG, as well as a link to a local news website article regarding marijuana being grown in warehouses. Specifically, on 4/22/2016, Heidi PHONG sent a message to Leonard YANG stating, "Your friends interested?" then she attached an article titled, http://fox40.com/2016/04/21/new-marijuana-storage-business-causes-controversy/. Leonard YANG responded, "Wherehouses". Later on 4/28/2016, after an exchange of messages regarding a property, Heidi PHONG asks if he wants to buy it and further states, "if so let me see if I can get a loan first". Sandie ZHONG responds, "Yes, if there's 2 meters," Later on 4/30/2016, Leonard Yang provides the name for the buyer of 8982 Elder Creek, Sacramento CA, which is a commercially zoned property purchased by Xiahua Ouyang for $565,000 in June 2016. Based on this information, it is apparent that Heidi PHONG knew Leonard YANG was a marijuana grower no later than April 2016. A few months later, in a text on 7/22/2016, Heidi PHONG even referred to Leonard YANG as her, "VIP Client".

32.    Based on the WeChat text messages seized from Leonard YANG's phone, it is apparent that Sandie ZHONG was also involved in several of the group texts that discussed the

11

purchasing of various homes and she even served as a translator in some cases. On 7/22/2016,

Heidi PHONG initiated a group text on WeChat, inviting Sandie ZHONG, Leonard YANG, Lin

Huynh, Roger Lee and an individual identified as Zhong Yan YANG. Heidi PHONG sent an

attachment to Leonard YANG, presumably of a home for sale, further stating, "they want 565k".

From a review of the exchange of serval text messages between Heidi PHONG, Leonard YANG

and Sandi ZHONG it appears that that deal fell through and on 8/23/2016 the group began a

discussion regarding the purchase of 6480 Marysville Road in Browns Valley, California.

33.    The WeChat texts indicated that Leonard YANG introduced Zhong Yan YANG

who became a client of Heidi PHONG at some point in the summer of 2016, for the purpose of

purchasing a residence to grow marijuana. Using wire transfers from China for the down

payment, and financing from a hard money lender for the balance, Zhong Yan YANG purchased

the real property located at 6480 Marysville Road, Browns Valley, CA (Yuba County) in

September 2016 with Heidi PHONG and Sandie ZHONG's assistance. The messages on

WeChat show that Sandie ZHONG was heavily involved in the coordination and the

communication between the buyer, Zhong Yan YANG, Leonard YANG and other members of

HP Real Estate. On 8/23/2016, the above group text was renamed to, "6480 marysville". From

8/23/2016 through 9/13/2016, Sandie ZHONG initiated or responded to approximately 62 of the

approximately 112 messages relating to the purchase on this property. The majority of the

message exchanges were in Chinese.

34.    Shortly after the purchase, PG&E records reflected a significant increase in the

power usage at the property. On January 24, 2018, the Yuba County Sheriff's Department

executed a search warrant at 6480 Marysville Road and found approximately 1,943 marijuana

plants.

12

35.     During the 2017 Yuba County Investigation, a home located at 9700 Clay Station Road, Wilton, CA, owned by Zhen Shang LIN, was searched. Pursuant to the search, officers found approximately 832 marijuana plants. Escrow documents for the purchase of this residence, as well as emails reviewed pursuant to the Heidi PHONG Gmail search warrant, revealed that Heidi PHONG, working under Davis Berk Realty at the time, was the agent who represented LIN in the purchase of the property. Furthermore, the escrow records reflected that SKYE INVESTMENT, LLC, another Heidi PHONG entity, and covered later in this affidavit, provided $99,708.28 to LIN for the purchase of the property. Title records reflect that although Stewart Title was handling the sale/purchase of the property, on November 10, 2015, SKYE INVESTMENT, LLC filed a Deed of Trust on the property for $105,000 with Orange Coast Title. Email records indicate that this was a short term loan that LIN repaid SKYE INVESTMENT, LLC with a combination of a wire transfer, cash, and other negotiable instruments. Additional emails from the Gmail search warrant revealed that after the search warrant was executed at 9700 Clay Station Road in March 2017, Zhen Shang LIN sold the property, and Heidi PHONG represented him in the sale.

36.     In March of 2017, a search warrant was conducted at two other properties connected with the 2017 Yuba County Investigation associated with Zhen Shang LIN included 7709 South Parkway, Sacramento, CA (where approximately 450 marijuana plants were found) and 5656 Shires Way, Marysville, CA (where approximately 449 marijuana plants, a Del-Ton .223 AR rifle and ammunition, as well as a Beretta .380 caliber pistol were found). Moreover, Zhen Shang LIN and his wife, Li Juan WANG were found inside of 5656 Shires Way.

37.     Pursuant to the Gmail search warrant, agents found an email, dated April 6, 2017, from Heidi PHONG to "Tasks – HP Real Estate" which appears to be monitored by PHONG's

13

assistant, Belle BALOLONG. The email, entitled "Urgent – need rental agreement – do not put

my name on anything" directed BALOLONG to prepare two rental agreements for the homes

located at 7709 South Parkway, Sacramento, CA and 5656 Shires Way, Marysville, CA. The

email further contained WeChat screenshots, entitled "5700 kirkhill dr & 77...", reflecting a

conversation between Heidi PHONG and Li Juan WANG, which discussed the terms of the

purported rental agreements. Heidi PHONG also asked, Li Juan WANG "Do it for Kirk hill also

[?]", to which Li Juan WANG responded "no kirkhill is good". From open source information,

this property is further identified as 5700 Kirkhill Drive, Linda, CA. According to a Yuba

County Sheriff's Detective, law enforcement did not execute a search warrant on 5700 Kirkhill

Drive as they were not aware of its involvement in their investigation at the time. This property

was purchased on or about January 31, 2017 by LI L. LIN, who is believed to be the same

individual who purchased 7709 South Parkway, Sacramento, CA. This property was listed for

sale less than three months later on April 22, 2017 (after the search warrants executed by Yuba

County) and was eventually sold on August 2, 2017. The listing agent was Heidi Phong.

    38.    Based on the texts and the associated emails, and the fact that I found several false

leases in the evidence of prior search warrants relating to this investigation, it is my belief that Li

Juan WANG was fearful that the properties located at 7709 South Parkway and 5656 Shires Way

would be seized by law enforcement for facilitating marijuana cultivation, so she therefore

asked Heidi PHONG to create false rental agreements to allow the titled owner to profess an

"innocent owner" defense to seizure and forfeiture of the properties. Further emails from the

Gmail search warrant indicate that Heidi PHONG was the listing agent for both 7709 South

Parkway and 5656 Shires Way when they were listed for sale in the summer of 2017.

**SKYE INVESTMENT LLC**

39.     In addition to PHONG's Real Estate business, she and her husband, Billy PHONG also own and operate SKYE INVESTMENT, LLC, an entity formed in 2016. According to the California Secretary of State, SKYE INVESTMENT, LLC is also a Real Estate Management business located at 5648 Belleview Ave., Sacramento California (Target Location 1). SKYE INVESTMENT LLC is involved in several of the real estate transactions either assisting in funding or coordinating the transactions for grower to grower transfers, including the property located at 2399 Cashaw Way.

40.     The Purchase and Sale of 2399 Cashaw Way. According to subpoenaed escrow records, Jie LIN made an offer to purchase 2399 Cashaw Way on or about January 31, 2016 for $408,000, that the seller accepted on or about that same date, and escrow account # 1727057-LX was opened at Orange Coast Title Company in Elk Grove, CA on or about February 3, 2016. A document found in the escrow file entitled "Business Purpose/Commercial Loan Certification" indicated the purpose of the loan: "This loan is used for real estate investment." Heidi PHONG represented LIN on this transaction.

41.     According to the escrow file, Jie LIN made a down payment of $170,500 which consisted of: $90,000.00 wired into the escrow from LIN's TD Bank account number XXXXX9800 ($10,000 on February 3, 2016 and $80,000 on February 10, 2016), $50,000.00 wired into the escrow on February 19, 2016 from Dan Hong CHEN (Bank of America account number XXXXX1276) and $30,500 wired into the escrow on February 19, 2016 from Xiu Ping LI (Bank of America account number XXXXXX6819).

42.     Records of these bank accounts were obtained by subpoena. The records reflected that the wire from Jie LIN's TD Bank account was funded by an earlier deposit of a

check from a title company that is pending further investigation. However, the records pertaining to Dan Hong CHEN's Bank of America account XXXXXX1276 revealed a wire from China in the amount of $50,000.00 on February 18, 2016, one day prior to CHEN sending the $50,000.00 wire to Orange Coast Title. Furthermore, the records pertaining to Xiu Ping LI's Bank of America account XXXXXX6819 revealed a wire from China for $29,989.00 on February 19, 2016, the same day LI wired $30,500.00 to Orange Coast Title.

43.     The balance of the funding, $234,490.27, came from the Northern California Mortgage Fund XI, LLC, a mortgage fund administered by FJM Private Mortgage. Identical to the homes used in Leonard YANG'S and Xiu Ping LI's marijuana growing operation, this loan was a 10% interest-only loan for two years. The loan called for monthly payments of $2,041.67 and a balloon payment $247,041.67 on March 1, 2018.

44.     Escrow for 2399 Cashaw Way closed on or about February 19, 2016, and title passed to Jie LIN.

45.     The Sale of 2399 Cashaw Way to Hao ZHUO. On November 1, 2016, shortly after the takedown of the Leonard YANG growing operation and after having only been owned approximately eight months, Jie LIN sold 2399 Cashaw Way for the same amount he had purchased it for [$408,000] to an individual identified as Hao ZHUO, who had an address of 8020 Renatta Drive, Lincoln, Nebraska. Subpoenaed escrow records regarding this sale reflected that this was a "For Sale by Owner" transaction, and there was no real estate agent on either side of the transaction. However, SKYE INVESTMENT, LLC, a Heidi PHONG entity, received a "Transaction Coordination Fee" in the amount of $2,500.00 that was split evenly between the buyer ZHUO and the seller LIN.

46. A review of the subpoenaed escrow file for HAO ZHUO's November 2016 purchase of 2399 Cashaw Way fit the exact same pattern observed in the earlier home purchases by Leonard YANG and Xiu Ping LI, as well as the earlier purchase of Cashaw Way by Jie LIN. ZHUO wired a total of $182,213.16 into escrow from two accounts he held, one at First National Bank of Omaha and the other at Wells Fargo Bank. Subpoenaed records of these bank accounts revealed that these wires, similar to the Leonard YANG and Xiu Ping LI home purchases, were funded by a wire transfer from China in the amount of $49,985.00 as well as checks from over twenty different individuals.

47. <u>2399 Cashaw Way SMUD Records after Purchase by Hao ZHUO.</u> Because the purchase of 2399 Cashaw Way by Hao ZHUO fit the pattern of the earlier home purchases, agents obtained SMUD records for the period after he bought the property. The records reflected that from November 2016 to May 2017, the monthly electricity usage averaged 12,397 KWH, which indicates that the new owners continued growing marijuana at that property.

48. <u>Summary – 2399 Cashaw Way.</u> In summary, the drug trafficking and financial investigation to date establishes probable cause to believe that Jie LIN purchased the home at 2399 Cashaw Way for the purpose of growing marijuana, and used wire transfers from China to substantially fund the purchase, and that Heidi PHONG facilitated the transaction, in violation of Title 21, U.S.C. §§ 841(a)(1) and 846, and Title 18, U.S.C. §§ 1956(a)(2)(A) and (h). The evidence further shows that Hao ZHUO, also using funding from China, later purchased the residence from Jie LIN and continued to use the home as a marijuana grow site, and that this transaction was also facilitated by Heidi PHONG and SKYE INVESTMENT, LLC, in further violation of Title 21, U.S.C. §§ 841(a)(1) and 846, and Title 18, U.S.C. §§ 1956(a)(2)(A) and (h).

17

**PROPERTY TRANSACTIONS BY HEIDI PHONG**

49.     As mentioned earlier, of the approximately 100 identified Target Properties

believed to be indoor marijuana grows, PHONG is the listed real estate agent or representative

on over 50% of them.  The Target Properties were identified through the review of escrow

records, bank records, utility records, local law enforcement checks, surveillance, and other

investigative tools.  The property transactions were reviewed to determine if they met the same

characteristics as the earlier homes identified in the Leonard YANG and Xiu Ping LI

investigations that were purchased to grow marijuana (i.e. large down payments, and the use of a

hard-money lender for financing, often times an out-of-state buyer and funds from China).   If

the homes met the criteria, agents obtained records from the power company to determine if the

property was likely being used to conduct indoor marijuana growing operations.  Based on my

training and experience, your affiant knows that monthly electrical power consumption for an

average residential household is approximately 500-1000Kwh per month on average.  As shown

below, the monthly averages for the suspected marijuana grow houses are serval times above that

average.

50.     The results for the following homes all relate to Heidi PHONG and are believed

to be or have been marijuana grows:

| PROPERTY # | REALTOR | Purchase Date | Purchase Price | Down Payment | Down Pmt % | Hard Money Lender | Avg. Electricity Usage (KWh) |
|---|---|---|---|---|---|---|---|
| PROPERTY #1 | Heidi Phong | 03/22/2016 | $860,000 | $455,000 | 53% | Yes | 14,256 |
| PROPERTY #2 | Heidi Phong | 03/28/2016 | $729,999 | $385,106 | 53% | Yes | 6,325 |
| PROPERTY #3 | Heidi Phong | 04/01/2016 | $540,000 | $270,000 | 50% | Yes | 12,077 |
| PROPERTY #4 | Heidi Phong | 01/31/2017 | $400,000 | $134,891 | 34% | Yes | 11,210 |
| PROPERTY #5 | Heidi Phong | 06/14/2017 | $489,500 | $196,500 | 40% | Yes | 15,495 |
| PROPERTY #6 | Heidi Phong | 07/14/2017 | $471,000 | $189,600 | 40% | Yes | 7,908 |
| PROPERTY #7 | Heidi Phong | 03/15/2017 | $300,000 | $90,000 | 30% | Yes | 6,745 |
| PROPERTY #8 | Heidi Phong | 10/26/2016 | $230,000 | $130,000 | 57% | Yes | 10,094 |

| PROPERTY #9 | Heidi Phong | 05/23/2016 | $350,000 | $140,000 | 40% | Yes | 7,792 |
| PROPERTY #10 | Heidi Phong | 12/23/2015 | $192,500 | $77,000 | 40% | Yes | 6,127 |
| PROPERTY #11 | None (Skye Investment, LLC) | 08/01/2017 | $305,000 | $145,000 | 48% | Yes | 9,905 |
| PROPERTY #12 | Heidi Phong | 04/12/2016 | $235,000 | $98,000 | 42% | Yes | 8,695 |
| PROPERTY #13 | Heidi Phong | 09/09/2016 | $500,000 | $250,000 | 50% | Yes | 7,617 |
| PROPERTY #14 | Heidi Phong | 01/07/2016 | $235,000 | $94,000 | 40% | Yes | 4,470 |
| PROPERTY #15 | None (Skye Investment, LLC) | 01/12/2016 | $180,000 | $72,000 | 40% | Yes | 6,224 |
| PROPERTY #16 | Heidi Phong | 08/04/2017 | $300,000 | $120,000 | 40% | Yes | 9,692 |
| PROPERTY #17 | Heidi Phong | 01/10/2017 | $400,000 | $160,000 | 40% | Yes | 6,411 |
| PROPERTY #18 | Heidi Phong | 04/03/2017 | $448,000 | $179,200 | 40% | Yes | 4,011 |
| PROPERTY #19 | Heidi Phong | 07/07/2017 | $450,000 | $163,000 | 36% | Yes | 9,364 |
| PROPERTY #20 | Heidi Phong | 06/11/2014 | $339,000 | $116,781 | 34% | Yes | 7,907 |
| PROPERTY #21 | Heidi Phong | 06/28/2017 | $243,000 | $121,500 | 50% | Yes | 7,248 |
| PROPERTY #22 | Heidi Phong | 09/30/2015 | $366,500 | $146,900 | 40% | Yes | 6,971 |
| PROPERTY #23 | Heidi Phong | 03/28/2017 | $476,503 | $476,503 | 100% | Yes | 11,168 |
| PROPERTY #24 | Heidi Phong | 10/07/2016 | $735,000 | $435,000 | 59% | Yes | 6,762 |
| PROPERTY #25 | Heidi Phong | 03/07/2016 | $219,000 | $109,000 | 50% | Yes | 3,986 |
| PROPERTY #26 | Heidi Phong | 08/12/2016 | $270,000 | $108,000 | 40% | Yes | 4,491 |
| PROPERTY #27 | Heidi Phong | 02/10/2017 | $265,000 | $265,000 | 100% | Yes | 6,532 |
| PROPERTY #28 | Heidi Phong | 12/10/2015 | $207,000 | $107,000 | 52% | Yes | 9,198 |
| PROPERTY #29 | Heidi Phong | 11/07/2016 | $561,000 | $224,520 | 40% | Yes | 14,130 |
| PROPERTY #30 | Heidi Phong | 03/16/2017 | $205,000 | $82,000 | 40% | Yes | 6,791 |
| PROPERTY #31 | Heidi Phong | 11/11/2016 | $241,000 | $96,400 | 40% | Yes | 11,485 |
| PROPERTY #32 | Heidi Phong | 12/05/2016 | $408,000 | $122,000 | 30% | Yes | 6,681 |
| PROPERTY #33 | Heidi Phong | 09/02/2016 | $260,000 | $91,000 | 35% | Yes | 5,957 |
| PROPERTY #34 | Heidi Phong | 05/10/2017 | $360,000 | $144,000 | 40% | Yes | 5,054 |
| PROPERTY #35 | Heidi Phong | 03/24/2016 | $182,000 | $77,000 | 42% | Yes | 9,154 |
| PROPERTY #36 | Heidi Phong | 07/11/2017 | $390,000 | $156,000 | 40% | Yes | 3,033 |
| PROPERTY #37 | Heidi Phong | 07/12/2017 | $265,000 | $133,000 | 50% | Yes | 6,977 |
| PROPERTY #38 | Heidi Phong | 08/05/2016 | $363,000 | $145,200 | 40% | Yes | 9,892 |
| PROPERTY #39 | Heidi Phong | 02/13/2017 | $390,000 | $156,000 | 40% | Yes | 7,771 |
| PROPERTY #40 | Heidi Phong | 12/08/2016 | $450,000 | $135,000 | 30% | Yes | 7,757 |
| PROPERTY #41 | Heidi Phong | 12/29/2016 | $422,500 | $169,500 | 40% | Yes | 3,463 |
| PROPERTY #42 | Heidi Phong | 03/22/2016 | $285,000 | $142,500 | 50% | Yes | 4,958 |
| PROPERTY #43 | Heidi Phong | 10/26/2016 | $425,000 | $170,000 | 40% | Yes | 8,398 |
| PROPERTY #44 | Heidi Phong | 10/20/2016 | $304,000 | $121,700 | 40% | Yes | 5,358 |
| PROPERTY #45 | Heidi Phong | 05/06/2016 | $429,000 | $229,000 | 53% | Yes | 6,130 |
| PROPERTY #46 | Heidi Phong | 07/14/2017 | $640,500 | $224,175 | 35% | Yes | 6,485 |
| PROPERTY #47 | Heidi Phong | 09/01/2016 | $530,000 | $265,000 | 50% | Yes | 17,529 |
| PROPERTY #48 | Heidi Phong | 02/05/2016 | $200,000 | $80,000 | 40% | Yes | 13,058 |

19

| PROPERTY #49 | Heidi Phong | 02/05/2016 | $200,000 | $80,000 | 40% | Yes | 3,353 |
| PROPERTY #50 | Heidi Phong | 12/12/2016 | $220,000 | $220,000 | 100% | Yes | 3,501 |
| PROPERTY #51 | Heidi Phong | 02/04/2016 | $255,000 | $102,000 | 40% | Yes | 5,186 |
| PROPERTY #52 | Heidi Phong | 06/02/2016 | $250,000 | $103,000 | 41% | Yes | 8,652 |
| PROPERTY #53 | Heidi Phong | 08/29/2017 | $150,000 | $75,000 | 50% | Yes | 7,460 |
| PROPERTY #54 | Heidi Phong | 12/05/2016 | $160,000 | $62,800 | 39% | Yes | 6,351 |

51.     Based on the chart above, approximately 25% of her total sales were outside her home-base of Sacramento and Elk Grove.  These other sales occurred in Wilton, Sloughhouse, Acampo, Galt, Fiddletown, etc.  This percentage does not include Heidi PHONG's prior property transactions included in the Leonard YANG, Xiu Ping LI and the 2017 Yuba City Investigation that were outside of the area.  Based on my experience real estate agents and brokers tend to specialize and advertise in a distinct area, which in her case is Sacramento and Elk Grove.  Consistent sales outside of this distinct area is unusual and may be an indicator of her association with an organization that is more concerned with obtaining marijuana grow houses throughout the region rather than just in Sacramento and Elk Grove.

## IDENTIFICATION OF THE BUSINESSES

52.     Your affiant checked www.metrolistpro.com that states it is "The Official Search Site for MetroList MLS - The Largest MLS in Northern California."  On that website I found profiles for Heidi PHONG, Jenny CHU and Sandie ZHONG along with their photos, their contact information was listed as follows:

> Heidi Phong
> HP Real Estate
> 9105 Bruceville Rd, Ste 6A, Elk Grove, CA 95758
> CalBRE #: 01880534
> Primary: (916) 949-6089
>
> Jenny Chu
> HP Real Estate
> 9105 Bruceville Rd, Ste 6A, Elk Grove, CA 95758
> CalBRE #: 02015445

Primary: (916) 562-0111

Sandie Zhong
HP Real Estate
9105 Bruceville Rd, Ste 6A, Elk Grove, CA 95758
CalBRE #: 02007811
Primary: (916) 599-6277

53.     On March 13, 2018, surveillance confirmed that Heidi PHONG left her home and went to the HP Real Estate located at 9105 Bruceville Road, Ste 6A, Elk Grove, California.

54.     On March 16, 2018, surveillance confirmed that Sandie ZHONG, after showing properties, went to HP Real Estate located at 5648 Belleview Ave., Sacramento California. Agents observed a sign for Heidi PHONG at that location.

55.     On March 20, 2018, surveillance initiated in vicinity of HP Real Estate, 9105 Bruceville Road, Elk Grove, California.  ZHONG's black Volkswagen Tiguan with paper plates was parked in the parking lot.  Sandie ZHONG was observed outside of the business smoking a cigarette.

**JENNY CHU**

56.     Prior to Jenny CHU working at HP Real Estate, she was involved with the purchase of three suspected marijuana properties, which all involved Heidi PHONG.

57.     On or about 3/29/2016, CHARISMA 18 AVE REALTY, INC. sold 8515 18th Avenue, Brooklyn, NY for $2,028,000 and executed a § 1031 exchange (a tax strategy under the Internal Revenue Code whereby a seller of property can defer his taxable gain by buying like-kind property), buying 10347 Alta Mesa Road, Wilton, CA (Property #1 above) for $860,000, 13701 Indio Drive, Sloughhouse, CA (Property #2 above) for $729,999, and 11709 Colony Road, Galt, CA (Property #3 above) for $540,000.  In total, CHARISMA 18 AVE REALTY, INC. put approximately 50% down payment for all properties.

21

58.     *Financing Model.*  FJM Private Mortgage, LLC financed all of these properties for a 2-year, interest-only, 9% note.  CHARISMA 18 AVE REALTY, INC. paid FJM $14,625.00 in loan fees for Target Property 1, $14,592.50 for Target Property 2, and $10,445.00 in fees for Target Property 3, for a total of $39,662.50 in fees.

59.     *Realtor.*  Heidi PHONG, working under Davis Berk Realty at the time, was the buyer's agent for all of these transactions.  I have reviewed email messages sent to and from Heidi PHONG related to this property, confirming her involvement in the transaction.

60.     One example from Heidi PHONG's email, is an email dated 4/4/2016, from Belle Balolong (Heidi PHONG's assistant) to a representative of Cornerstone Title Company regarding Target Property 3 was found.  The email read as follows:

"Hi Deb, Please schedule buyer [CHARISMA 18 AVE REALTY, INC.] signing at 2172 86th St., Brooklyn NY 11214.  You can contact JENNY CHU at 347-865-9812 to schedule…"

61.     This email indicates that JENNY CHU was associated with CHARISMA 18 AVE REALTY, INC. and was the contact person for the signing of documents pertaining to the purchase.

62.     *In 2017, FJM, Private Mortgage, LLC Requests Asset Inspections.*  FJM became aware that some of the properties they financed were being used for marijuana cultivation and they began to request inspections of the properties.  In some cases the owners took steps to transfer the deeds of trust to other hard money lenders to avoid FJM inspecting the homes.  Prior to the FJM loans were due, CHARISMA 18 AVE REALTY, INC. refinanced both 13701 Indio Drive, Sloughhouse, CA  and 11709 Colony Road, Galt, CA with other hard money lenders.

63.     *The Suspicious Sale of 10497 ALTA MESA ROAD, WILTON, CA (Property # 1).*

On or about 10/23/2017, CHARISMA 18 AVE REALTY, INC. sold Target Property 1 to an

individual identified as Weiren LI for $830,000.  According to documents contained in the

escrow file, Weiren LI is the uncle of Jenny CHU.  Weiren LI made a down payment in the

amount of $297,674.55 (a 30% down payment) as follows:

| Target Property 1– 10497 ALTA MESA ROAD, WILTON, CA | | |
|---|---|---|
| Date | Amount | Description |
| 6/23/2017 | $10,000.00 | Wire transfer from Bank of America account #XX8316 in the name of Weiren LI and Jenny CHU (linked to 13701 Indio Dr., Sloughhouse, CA, as described above) funded by 16 checks and cashier's checks from 13 different individuals (including Weirnen LI) totaling $185,000, deposited to the account from 5/8/2017 through 5/15/2017, eight of which had "gift" written in the memo line. |
| 10/13/2017 | $127,674.55 | Wire transfer from Bank of America account #XX8316 in the name of Weiren LI and Jenny CHU (linked to 13701 Indio Dr., Sloughhouse, CA, as described above) funded by 16 checks and cashier's checks from 13 different individuals, including Weiren LI, totaling $185,000 deposited to the account from 5/8/2017 through 5/15/2017, eight of which had "gift" written in the memo line. |
| 10/20/2017 | $160,000.00 | Wire transfer from Bank of America account #XX2317 in the name of Jenny CHU (linked to 13701 Indio Dr., Sloughhouse, CA, as described above) funded by a $160,000.00 check from Jenny CHU's TD Bank account #xx8614.  Deposits to this TD Bank account are pending identification. |

64.     *Financing Model.*  The balance of the purchase price, $572,000.00, was financed

through a two-year, 10.99% interest-only loan from "hard-money" lender Michael E.

Mahgerefteh.  Weiren LI paid $27,310.00 in loan fees for this purchase.  Jenny CHU executed a

"Third Party Deposit – Authorization" which was filed with the escrow.  On this document, she

indicated she was Weiren LI's niece, and she further indicated she lived at 13701 Indio Drive, Sloughhouse, CA

     65.   *Realtor.* No realtor was used in this transaction.

     66.   *Power Usage.* As indicated earlier, the power records from establish that Target Properties 1, 2 and 3 are likely being used or were used in marijuana cultivation. The average monthly electricity usage (KWh) consumption was 14,256, 6,325, and 12,077 respectively for those properties.

## BACKGROUND CONCERNING REAL ESTATE OFFICES

     67.   In my training and experience, I have learned that businesses, particularly real estate or other financial businesses keep records for long period of time in both physical and electronic form, including Property files which often include escrow files; sales files; purchase agreements; property transaction records including deeds, deeds of trust, notices of default, trust documents, and notices of sale; notary books, appraisals, letters, mortgage and/or loan records; credit reports, loan application, verification of deposit, employment(s) and correspondence related thereto; promissory notes; canceled checks and bank records; rental agreements, leases, and contracts; rent/income ledgers; journals and ledgers or other books of original entry including cash receipts/disbursement journals, general journals and other books of account; correspondence relating to the purchase, sale, or rental/lease of real estate; records documents and materials including client files reflecting offers to purchase or rent properties by, for, and on behalf of clients and potential borrowers and buyers; and correspondence.

     68.   I also know that businesses maintain banking and financial records, tax records, diaries, calendars, appointment books; as well as documentation indicating ownership and/possession of premises.

## COMPUTERS AND ELECTRONICS

69.     As described above and in Attachment B, this application seeks permission to search for records that might be found at the premises referenced above and in Attachments A-1 through A-2, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

70.     I submit that if a computer or storage medium is found on the premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

25

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.  Based on actual inspection of other evidence related to this investigation, I am aware that computer equipment was used to generate, store, and transmit information used in illegal gaming. There is reason to believe that there are computer systems currently located on the locations identified in Attachments A-1 through A-2.

71.   As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the premises because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a

file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs

27.

may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contains information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating

28

criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

72.    As is the case of the operations in the HP Real Estate, the computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the

29

computer was used; data that was sent or received; notes as to how the criminal conduct was

achieved; records of Internet discussions about the crime; and other records that indicate the

nature of the offense.

73.   In most cases, a thorough search of a premises for information that might be

stored on storage media often requires the seizure of the physical storage media and later off-site

review consistent with the warrant. In lieu of removing storage media from the premises, it is

sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the

taking of a complete electronic picture of the computer's data, including all hidden sectors and

deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and

completeness of data recorded on the storage media, and to prevent the loss of the data either

from accidental or intentional destruction.  This is true because of the following:

   a.   The time required for an examination. As noted above, not all evidence takes the

       form of documents and files that can be easily viewed on site.  Analyzing

       evidence of how a computer has been used, what it has been used for, and who

       has used it requires considerable time, and taking that much time on premises

       could be unreasonable. As explained above, because the warrant calls for forensic

       electronic evidence, it is exceedingly likely that it will be necessary to thoroughly

       examine storage media to obtain evidence.  Storage media can store a large

       volume of information.  Reviewing that information for things described in the

       warrant can take weeks or months, depending on the volume of data stored, and

       would be impractical and invasive to attempt on-site.

   b.   Technical requirements. Computers can be configured in several different ways,

       featuring a variety of different operating systems, application software, and

30

configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.   Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

74.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

75.   As it is known that persons other than PHONG, ZHONG, and CHU may share each of the premises, it is possible that the locations will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

76.     HP Real Estate is an active real estate business, with potentially some of its activities legal and legitimate.  As mentioned before, the focus of this investigation was and is on the "The Organizations" connection to illegal narcotics activities and the related money laundering activities.  As such, the seizure of computer(s) from this search site may limit the businesses ability to conduct any legitimate business transactions. As with any search warrant, I expect that this warrant will be executed reasonably.  Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

## CONCLUSION

77.     Based on the forgoing, I believe probable cause exists to believe that the following Target Locations contain evidence, fruits, and instrumentalities of the offenses of 21 U.S.C. § 841(a)(1), 846 and 856, and 18 U.S.C. §§ 1956:

a)     HP Real Estate, 5648 Belleview Ave, Sacramento, California, (Attachment A-1)

b)     HP Real Estate, 9105 Bruceville Road, Ste 6A, Elk Grove, California, (Attachment A-2)

78.     I have personally, or other law enforcement officials, observed the search warrant locations described in Attachments A-1 and A-2 and request that search warrants be issued for the items listed in Attachment B of this affidavit.

79.     I swear under penalty and perjury that the foregoing information is true and correct to the best of my knowledge, information, and belief.

## REQUEST FOR SEALING

80.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Lisa S. Ulrikson
Special Agent
IRS – Criminal Investigation

Subscribed and sworn to before me on March _29_, 2018

Honorable Edmund F. Brennan
UNITED STATES MAGISTRATE JUDGE

APPROVED AS TO FORM BY:

ROGER YANG
ASSISTANT UNITED STATES ATTORNEY

## ATTACHMENT A-1

### Property to Be Searched

__HP REAL ESTATE__

__5648 Belleview Avenue, Sacramento California__

The location to be searched is a real estate office located in a converted house off of Belleview Avenue.  The location has a black iron fence in the front yard with a black mail box displaying "5648".  The street address "5648" is also displayed on the front post in front of the door of the business.



## ATTACHMENT A-2

### Property to Be Searched

### HP REAL ESTATE

### 9105 Bruceville Road, Ste 6A, Elk Grove California

The location to be searched is a real estate office located in a strip mall off of Bruceville Road, with the nearest cross street being Bruceville Road and Laguna Boulevard in Elk Grove California.  The front of the business has windows incased in black trim, with a glass front door. There is a sign over the front door that reads, "hp REAL ESTATE" and the suite number "6A" is also displayed directly over the door.



**ATTACHMENT B**

**Definitions:**

The terms "records" and "documents" and "materials" include all of the forgoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CS-ROMs, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as a tablet computers, "smart phone" communication device, as wells as printouts or readouts from any magnetic storage device); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

**Description of Property to be Mirrored or Seized:**
Communication devises (phones, tablets and computers) belonging to:
- HP Real Estate
- Skye Investment, LLC
- Heidi PHONG
- Sandie ZHONG
- Jenny CHU

**The following documents and items for the time period January 1, 2014 to the present:**

a.    All property files including but not limited to escrow files; sales files; purchase agreements; property transaction records including deeds, deeds of trust, notices of default, trust documents, and notices of sale; notary books, appraisals, letters, mortgage and/or loan records; credit reports, loan application, verification of deposit, employment(s) and correspondence related thereto; promissory notes; canceled checks and bank records; rental agreements, leases, and contracts; rent/income ledgers; journals and ledgers or other books of original entry including cash receipts/disbursement journals, general journals and other books of account; correspondence relating to the purchase, sale, or rental/lease of real estate; records documents and materials including client files reflecting offers to purchase or rent properties by, for, and on behalf of clients and potential borrowers and buyers; any correspondence.

b.    Documents, records and materials indicating ownership and/or possession of premises to be searched including but nor limited to utility bills, telephone bills, mail and vehicle registration and ownership information and address books or calendars.

c.    Large amounts (in excess of $1,000) of U.S. and/or Foreign currency.

d.    Banking and financial institution records including but not limited to bank statements, canceled checks, money orders, traveler's checks, cashier's checks, deposit

slips, check and savings books, loan applications, loan statements, wire transfer slips, credit card transaction slips and statements, and evidence of rental or control of safe deposit boxes or other storage locations including safety deposit box or locker keys.

    e.    Unopened mail matter for the individuals and/or business names listed above.

    f.    Corporate minute books of stockholders and board of director meetings, and other records that identify ownership and control of the operation.

    g.    State and Federal tax returns and return information and tax preparation documents, and personal computer records that maintain such information, in the names of the individuals and/or the businesses listed above.

    h.    Employee lists, employment agreements, independent contractor agreements, or other documents concerning who was employed by HP Real Estate, Skye Investment, LLC and what their job descriptions or roles were.

    i.    Records which identify or lead to the identification of the purchase of any tangible assets by any of the individuals or entities listed above.

    j.    Diaries, calendars (whether conventional or electronic), appointment books, journals, address/telephone books (including an address/telephone rolodex or similar index).

    k.    All electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include, but are not limited to, computers, computer components, computer peripherals, removable media (floppy disks, Zip disks, tapes, CD-ROM's, flash cards), word processing equipment, modems, monitors, plotters, encryption circuit boards, optical scanners, external hard disk drives, and other computer related electronic devices

    l.    All instruction or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components. The items to be seized include, but are not limited to, operating systems, application software, passwords, decryption keys, utility programs, compilers, interpreters, and any other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission.

    m.    All records and communication pertaining to power supply to residential houses including power needs and names and contact information for electricians.

    n.    All communications, whether written, digital, or otherwise, discussing inspections of houses or scheduling of inspection of houses.

o.     Communications about, whether written, digital, or otherwise, pictures or copies of, wires from China.

p.     Communications about, whether written, digital, or otherwise about persons not on the title of residences contributing to the purchase of residences.

q.     Communications about, whether written, digital, or otherwise home buyers not wanting or otherwise forgoing home inspections.

r.     Communications or reports about, whether written, verbal, digital, or otherwise, law enforcement or code enforcement actions at any properties associated with, or currently or previously represented by HP Real Estate or Skye Investment LLC.

s.     Communications, reports, pictures of, or any other documentation of growing marijuana.

t.     Information, research, news articles, or publications about the legal status, regulations, or ordinances concerning the growing of marijuana in California or the United States. This EXCLUDES attorney-client privileged communications or materials.

u.     Ledgers, calculation sheets, fee schedules, or other documents indicating how much Heidi Phong, Sandie Zhong, Jenny Chu, HP Real Estate, Davis Berk Realty, or Skye Investment LLC should be paid for its services.

## ATTACHMENT B

### Definitions:

The terms "records" and "documents" and "materials" include all of the forgoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CS-ROMs, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as a tablet computers, "smart phone" communication device, as wells as printouts or readouts from any magnetic storage device); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

### Description of Property to be Mirrored or Seized:
Communication devises (phones, tablets and computers) belonging to:
- HP Real Estate
- Skye Investment, LLC
- Heidi PHONG
- Sandie ZHONG
- Jenny CHU

### The following documents and items for the time period January 1, 2014 to the present:

a.    All property files including but not limited to escrow files; sales files; purchase agreements; property transaction records including deeds, deeds of trust, notices of default, trust documents, and notices of sale; notary books, appraisals, letters, mortgage and/or loan records; credit reports, loan application, verification of deposit, employment(s) and correspondence related thereto; promissory notes; canceled checks and bank records; rental agreements, leases, and contracts; rent/income ledgers; journals and ledgers or other books of original entry including cash receipts/disbursement journals, general journals and other books of account; correspondence relating to the purchase, sale, or rental/lease of real estate; records documents and materials including client files reflecting offers to purchase or rent properties by, for, and on behalf of clients and potential borrowers and buyers; any correspondence.

b.    Documents, records and materials indicating ownership and/or possession of premises to be searched including but nor limited to utility bills, telephone bills, mail and vehicle registration and ownership information and address books or calendars.

c.    Large amounts (in excess of $1,000) of U.S. and/or Foreign currency.

d.    Banking and financial institution records including but not limited to bank statements, canceled checks, money orders, traveler's checks, cashier's checks, deposit

slips, check and savings books, loan applications, loan statements, wire transfer slips, credit card transaction slips and statements, and evidence of rental or control of safe deposit boxes or other storage locations including safety deposit box or locker keys.

     e.    Unopened mail matter for the individuals and/or business names listed above.

     f.    Corporate minute books of stockholders and board of director meetings, and other records that identify ownership and control of the operation.

     g.    State and Federal tax returns and return information and tax preparation documents, and personal computer records that maintain such information, in the names of the individuals and/or the businesses listed above.

     h.    Employee lists, employment agreements, independent contractor agreements, or other documents concerning who was employed by HP Real Estate, Skye Investment, LLC and what their job descriptions or roles were.

     i.    Records which identify or lead to the identification of the purchase of any tangible assets by any of the individuals or entities listed above.

     j.    Diaries, calendars (whether conventional or electronic), appointment books, journals, address/telephone books (including an address/telephone rolodex or similar index).

     k.    All electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include, but are not limited to, computers, computer components, computer peripherals, removable media (floppy disks, Zip disks, tapes, CD-ROM's, flash cards), word processing equipment, modems, monitors, plotters, encryption circuit boards, optical scanners, external hard disk drives, and other computer related electronic devices

     l.    All instruction or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components. The items to be seized include, but are not limited to, operating systems, application software, passwords, decryption keys, utility programs, compilers, interpreters, and any other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission.

     m.    All records and communication pertaining to power supply to residential houses including power needs and names and contact information for electricians.

     n.    All communications, whether written, digital, or otherwise, discussing inspections of houses or scheduling of inspection of houses.

o.    Communications about, whether written, digital, or otherwise, pictures or copies of, wires from China.

p.    Communications about, whether written, digital, or otherwise about persons not on the title of residences contributing to the purchase of residences.

q.    Communications about, whether written, digital, or otherwise home buyers not wanting or otherwise forgoing home inspections.

r.    Communications or reports about, whether written, verbal, digital, or otherwise, law enforcement or code enforcement actions at any properties associated with, or currently or previously represented by HP Real Estate or Skye Investment LLC.

s.    Communications, reports, pictures of, or any other documentation of growing marijuana.

t.    Information, research, news articles, or publications about the legal status, regulations, or ordinances concerning the growing of marijuana in California or the United States. This EXCLUDES attorney-client privileged communications or materials.

u.    Ledgers, calculation sheets, fee schedules, or other documents indicating how much Heidi Phong, Sandie Zhong, Jenny Chu, HP Real Estate, Davis Berk Realty, or Skye Investment LLC should be paid for its services.

v.    All records relating to hard money lenders including but not limited to FJM, any communication logs, ledgers, financial agreements, payments or referral fees, loan applications, loans documents, loan agreements, internal memorandums, re-payment records, all correspondence.



1  McGREGOR W. SCOTT
   United States Attorney
2  ROGER YANG
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5

**ORIGINAL**
**FILED**

MAR 3 0 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

6  Attorneys for Plaintiff
   United States of America
7

8                 IN THE UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 IN THE MATTER OF THE APPLICATION        CASE NO. 2:18-SW 0310    EFB
   OF THE UNITED STATES OF AMERICA
   FOR THE SEARCH OF:
12 HP Real Estate located at 5648 Belleview Ave.,   [PROPOSED] ORDER RE: REQUEST TO SEAL
   Sacramento, CA                                    DOCUMENTS
13 and
   HP Real Estate located at 9105 Bruceville         **UNDER SEAL**
14 Road., Elk Grove, CA

15

16

17                         **SEALING ORDER**

18        Upon application of the United States of America and good cause having been shown,

19        IT IS HEREBY ORDERED that the search warrant and search warrant affidavit underlying the

20 search warrant in the above-entitled proceeding shall be filed under seal and shall not be disclosed to

21 any person, unless otherwise ordered by this Court.

22

23 Dated: _4-29-2018_____          _____
                                        Hon. Edmund F. Brennan
24                                      U.S. MAGISTRATE JUDGE

25

26

27

28

SEALING ORDER                               1

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

In the Matter of the Search of
THE PERSONS OF HEIDI PHONG AND SANDIE
ZHONG, AND MOBILE PHONES BELONGING
TO OR SUBSCRIBED TO HEIDI PHONG AND
SANDIE ZHONG, BELIEVED TO HAVE PHONE
NUMBERS 916-949-6089, 916-698-8801, 916-743-
1156, and 916-743-1145; A DARK GRAY HONDA
ODYSSEY WITH PAPER PLATES WITH VIN
5FNRL5H91GB156249, DRIVEN BY HEIDI
PHONG and A BLACK VOLKSWAGEN TIGUAN
SUV WITH PAPER PLATES, DRIVEN BY
SANDIE ZHONG

)
)
)
)
)
)

Case No.

**2:18-SW  0325  EFB**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____April 18, 2018_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____

Date and time issued:  ___4-4-2018___          _____
                                                                          *Judge's signature*

City and state:    ___Sacramento, California___        ___Edmund F. Brennan, U.S. Magistrate Judge___
                                                                                          *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

| | |
|---|---|
| _____ | _____ |
| Signature of Judge | Date |